**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

J & B ENTERTAINMENT, D/B/A
BABE'S SHOW CLUB                                                    PLAINTIFF

vs.                                                    Civil Action No. 3:06-cv-144WS

CITY OF JACKSON, MISSISSIPPI;
MAYOR FRANK MELTON, IN BOTH HIS
OFFICIAL AND INDIVIDUAL CAPACITIES;
SGT. WILLIAM GLADNEY, IN BOTH HIS
OFFICIAL AND INDIVIDUAL CAPACITIES;
DETECTIVE SAMUEL GARDNER, IN BOTH
HIS OFFICIAL AND INDIVIDUAL CAPACITIES;
AND JACKSON POLICE OFFICERS, JOHN
DOES ONE THROUGH TEN, IN BOTH THEIR
OFFICIAL AND INDIVIDUAL CAPACITIES                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Before this court is the motion of the plaintiff J&B Entertainment, d/b/a Babe's

Show Club ("Babe's") for a temporary restraining order against the City of Jackson,

Mississippi, Mayor Frank Melton, Sgt. William Gladney and Detective Samuel Gardner,

along with unnamed John Doe police officers pursuant to Rule 65[1] of the Federal

---

[1]Rule 65(a)provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Rule 65(b)provides that courts may grant a TRO without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Rules of Civil Procedure.  By this motion, Babe's hopes to persuade this court that defendants' closure of its establishment on March 11, 2006, supposedly under the auspices of Art. VII, Licensing and Regulation of Sexually Oriented Businesses,[2] Ord. No. 2000-26(25), codified in Jackson, Mississippi, Code §§ 30-251 to 373, violated Babe's procedural and substantive due process rights.  Championing this claim and contending that the law and facts establish such, Babe's is asking this court to declare defendants' closure actions improper and to allow Babe's immediately to reopen.

The defendants are City of Jackson, Mississippi;  Mayor Frank Melton, in both his official and individual capacities;  Sgt. William Gladney, in both his official and individual capacities;  Detective Samuel Gardner, in both his official and individual capacities;  and Jackson Police Officers John Does One Through Ten, in both their official and individual capacities.[3]  All of these defendants, says Babe's, participated in the improper closure of the business.

---

[2]In another lawsuit, *A&C Entertainment, et al. v. City of Jackson*, Civil Action No. 3:01-cv-88 WS, Babe's has challenged the constitutionality of this Ordinance, but, significantly, in this lawsuit, Babe's is proceeding under the Ordinance as though it is constitutional, without waiving any of its constitutional challenges.  Thus, this court has analyzed Babe's request for injunctive relief under a presumptively-valid municipal Ordinance, even though in another lawsuit this court will address Babe's constitutional challenges.

[3]According to plaintiff, it cannot identify at this time the other police officers who participated in the closure because Sgt. Gladney refused to identify them.  Their identities, says plaintiff, will be determined during discovery.

On March 13, 2006, the plaintiff filed this lawsuit under Title 42 U.S.C. §§ 1983[4]

and 1988[5] claiming violations of its First,[6] Fourth,[7] Fifth[8] and Fourteenth Amendment[9]

rights under the United States Constitution.  Because the plaintiff seeks relief on the

_____

[4]Title 42 U.S.C. § 1983 provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[5]Title 42 U.S.C. § 1988(b) provides that, "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction."

[6]The First Amendment to the Constitution of the United States provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; *or abridging the freedom of speech*, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

[7]The Fourth Amendment of the Constitution of the United States provides that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[8]The Fifth Amendment of the Constitution of the United States provides that, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation."

[9]Section 1 of the Fourteenth Amendment to the Constitution of the United States provides that, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

merits of this action under Title 42 U.S.C. § 1983, Title 28 U.S.C. § 1331[10] provides

this court's jurisdictional foundation, as well as Title 28 U.S.C. § 1343(A)(3).[11]

## THE ORDINANCE

The Ordinance in question is a comprehensive enactment designed to regulate

every aspect of a sexually-oriented business.  The Ordinance states that its purpose is

to establish reasonable and uniform regulations in order to minimize the negative

secondary effects of such businesses within the City of Jackson.  The Ordinance

contains a licensing requirement stating that a sexually-oriented business may not

operate without a valid license.  The Ordinance requires an application for this license

to be submitted to the Jackson Police Department, an application containing

information reasonably necessary to enable the City of Jackson to determine whether

the applicant meets the qualifications set out therein.  An applicant must designate one

or more individuals who are to be responsible for the operation of the business.  An

applicant must state his name and any aliases, the name he will be using to operate

the business and whether he has been convicted of any crime as specified by the

Ordinance.

The Ordinance requires a sexually-oriented business to display its license

prominently, as well as its floor plan drawn to scale showing the configuration of the

---

[10]Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[11]Title 28 U.S.C. § 1343(a)(3) provides: (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:  (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

premises.  Restrooms may not contain video reproduction equipment.  The interior of the premises shall be configured to provide an unobstructed view of every area of the premises to which any patron is permitted access.  No alterations in the configuration can be made without approval of the Jackson Police Department.  At least one employee must be on duty at any time a patron is present, and an employee's station[12] shall not exceed thirty-two square feet of floor area.  No patron is permitted access to any area prohibited by the City of Jackson's license application.  No viewing booth may be occupied by more than one person at any time.  The Ordinance requires an illumination level of not less than five (5.0) footcandles as measured at floor level, and this illumination must be maintained at all times that any patron is present in the premises.  In the event of a power failure, the business shall stop operations immediately.  All floor coverings must be non-porous, easily cleanable surfaces, with no rugs or carpeting.  No employee on the premises of a sexually-oriented business may appear in a state of nudity as defined in Sec. 30-252 of the Ordinance.[13]  No employee may intentionally or knowingly touch a customer or a customer's clothing or permit himself or herself to be touched.  Any live entertainment must take place in the direct, unobstructed line of sight of an employee's station at which at least one employee is on duty.  The sexually-oriented business must provide separate dressing room facilities for female and male entertainers which shall not be occupied or used in

---

[12]Sec. 30-252 defines "employee station" as an area on the premises of a sexually-oriented business designated for occupancy exclusively by one or more employees whose duties include assuring compliance with the provisions of this article.

[13]Sec. 30-252 defines "nudity" as the "showing of the human genitals, anus or the female nipple."

any way by any one other than the entertainers.  No sexually-oriented business shall remain open at any time between the hours of 2:00 a.m. and 7:00 a.m. on weekdays and Saturdays, and at no time between the hours of 2:00 a.m. and 12:00 p.m. on Sunday.  The Ordinance requires the operator of a sexually-oriented business to enforce a no-loitering policy and to post signs conspicuously which state that no loitering is permitted.  The operator of the sexually-oriented business must designate one or more employees to monitor the activities of persons on the property by visual inspection conducted at least once every thirty minutes or by using video cameras and monitors.

## THE CLOSURE

On January 29, 2006, Mayor Frank Melton and several Jackson Police Department Officers entered the plaintiff's business facility know as Babe's, a business purportedly engaged in the presentation of First Amendment protected exotic dance performances which provided, as an integral component of their communicative characteristics, an emphasis on human sexuality.  Mayor Melton informed the manager that Babe's would be closed by the City of Jackson as early as Friday, February 3, 2006, because it was operating without a valid license.  The City did not act to close Babe's on this date.

According to the plaintiff, on March 10, 2006, it received a letter[14] delivered by

---

[14]The second paragraph of the March 10, 2006, letter states that, "[d]uring December 2005, following an inspection of your business by the Building Inspector and me, you are notified by letter that you did not have a valid business license on file at the Sign and License Division.  "Prior to issuance of a Sexually Oriented Business License, you need to report to the License and Permit Unit at 127 S. Roach St., Sixth Floor, and Begin the Application Process."

City of Jackson police officers.  Detective Samuel Gardner, Inspector, License and

Permit Unit, City of Jackson, wrote this letter, stating that:

> [y]our business does not have valid Sexually Oriented Business License.
> According to our records you applied for renewal of your business
> license on January 13, 2005, but no record of a license being issued.
> However, there is no record of an application or license issued for 2006.

On March 11, 2006, says plaintiff, after opening Babe's for business as usual, City of

Jackson police officers appeared and closed the business indefinitely.  The manager,

one Richard Merritt, protested the closing and was arrested by Sgt. William Gladney.

Merritt says that he remained in police custody until 2:00 A.M. the following morning.

## THE HEARING FOR INJUNCTIVE RELIEF

On March 13, 2006, the plaintiff filed this lawsuit pursuant to Title 42 U.S.C.

§§1983 and 1988, claiming violations of its First, Fourth, Fifth and Fourteenth

Amendment rights under the United States Constitution, and seeking attorney fees.

The plaintiff also seeks injunctive relief on the merits of its constitutional claims.  On

March 27, 2006, this court conducted an evidentiary hearing on plaintiff's motion for

injunctive relief and heard from various witnesses.  The testimony of those various

witnesses is set out below.

## TESTIMONY SUBMITTED IN SUPPORT OF INJUNCTIVE RELIEF

The plaintiff operates as Babe's Show Club, presenting performances by exotic

dancers described as sexually-oriented and directed at adult entertainment.  Babe's

was established in Jackson, Mississippi, based on significant investment, and obtained

all the building, site plan, and certificates of occupancy required by law.  In 2003,

Babe's applied for and obtained the necessary license for a general operating

business privilege, and the license for the operation of a sexually-oriented business. The parties agree that Babe's obtained the necessary licences for operation of a sexually-oriented business in March of 2003, and that this license expired in March of 2004.

### A.  The Testimony of Bo Powell

Bo Powell, the General Manager of Babe's, testified that the City of Jackson's procedures regarding the issuance of the Babe's sexually-oriented business license were lax, confusing and inconsistent.  Powell said that he had participated in the original application process in January of 2001, for securing a sexually-oriented business license, and that ever since he had either participated in, or directed attempts on behalf of Babe's, to obtain renewals of this license.

Powell complained that the City of Jackson had embarked on a policy of giving haphazard and inconsistent treatment to applications for sexually-oriented business licenses after 2004.  Powell stated that he seldom got a straight answer on any question from any City of Jackson representative, and that he felt each employee he contacted was simply trying to "pass the buck" when dealing with adult entertainment issues.

On January 13, 2005, Powell says he personally attempted to renew Babe's license for the sexually-oriented business and proceeded to the sixth floor of the Standard Life Building at 127 South Roach Street, the location of the License and Permit Unit for the City of Jackson, Mississippi.  Powell says he was provided with an application form (Form No. 0001-11/21/00) on which he entered the name and address of the owner of Babe's, James B. Altman of 6429 Cornwall Circle,

8

Indianapolis, Indiana 46256, and other information.  According to Powell, he handed this application form to Emma Wiggins,[15] the City of Jackson employee (License Technician) on duty, who wrote at the top of the application the words "Temporary License," placed her signature on the bottom, "E. Wiggins," and stamped the application "received" as of January 13, 2005.  Powell states that, according to Wiggins, renewal applications could be submitted without the necessity of the original applicants being present or providing new fingerprint cards as long as the originally-submitted items remained on file.  Moreover, says Powell, Wiggins assured him that the January 13, 2005, application, marked by Wiggins as a "Temporary License," would allow Babe's to continue its business operations until a permanent license was issued.  Thereafter, Powell says that he repeatedly contacted the License and Permit Unit to inquire about the permanent license, and was always told that the January 13, 2005, temporary license would suffice until the permanent license was issued.

Powell testified that his concern for the lack of a permanent licence, and the City of Jackson's apparent willingness to regard his January 13, 2005, application as the Babe's sexually-oriented business license, led him to believe that his *de facto* license would expire in January of 2006.  Because other licenses for Babe's would be coming due in November of 2005, Powell says he dispatched manager Richard Merritt to obtain all operating licenses.  According to Powell, Richard Merritt went to the License and Permit Unit on the sixth floor of the Standard Life Building, and was directed by a police officer on duty there to proceed to the Sign and Permit Office

---

[15]The City says that Emma Wiggins has left employment by the City and could not be reached to testify.

located on President Street in Jackson.   Powell noted that Merritt paid the clerk on duty at the Sign and Permit Office $200.00 and came back to Babe's with the January 13, 2005, application stamped "Paid October 28, 2005."  Powell says he believed that the Babe's  "temporary license" had been reissued in accordance with what appeared to be the current custom and practice, but he also stated that he did not feel assured by the way the purported reissuance was handled.

In December of 2005, says Powell, Detective Samuel Gardner and a City of Jackson building inspector came to Babe's to conduct an investigation of the premises. Though Powell was not present at the time, he says he later learned Gardner and the inspector discovered a malfunctioning urinal.  Because the problem was nothing more than a faucet which had been turned off, Powell said the matter was quickly corrected and that all inspection requirements to support the issuance of a permanent sexually-oriented business license were satisfied.

Detective Gardner testified that he sent Powell a letter in December of 2005 stating that the Babe's sexually-oriented business license had expired.  Powell says he never received this letter;  instead, Powell contends that Gardner may have raised this issue with an employee of Babe's when the building inspection was being conducted. Powell says that he always tried to secure a permanent license, or to obtain assurance that the City of Jackson would continue to recognize the "temporary license" as the lawful basis for the operation of the business.

Then, says Powell, on March 10, 2006, police officials came to Babe's with a letter from Detective Samuel Gardner dated the same date and informing Babe's that it

10

would have to obtain a sexually-oriented business license.  The text of the letter reads

as follows:

> Dear Mr. Altman:
>
> Your business does not have a valid Sexually Oriented Business
> License.  According to our records, you applied for renewal of your
> business license on January 13, 2005 but no record of a license being
> issued.  However, there is no record of an application or license issued
> for 2006.
>
> During December 2005, following an inspection of your business by the
> building inspector and me, you were notified by letter that you did not
> have a valid business license on file at the Sign and License Division.
>
> Prior to issuance of a Sexually Oriented Business License, you need to
> report to the License and Permit Unit at 127 South Roach Street, 6th
> Floor, and begin the application process.
>
> Sincerely,
>
> Detective Samuel Gardner
> Inspector, License and Permit Unit

Powell said that he was tired of the arbitrary manner in which the City of

Jackson had been handling the license matter and contacted his attorney.  On advice

of counsel, says Powell, Babe's opened for business on March 11, 2006, and operated

for just over an hour before the City of Jackson police arrived and closed the

establishment for lack of a valid license to operated a sexually-oriented business.

Powell complains that this closure was effected without a hearing, or any other

proceeding at which Powell could explain his side of the matter.

### B.  The Testimony of Richard Merritt

Richard Merritt, a manager at Babe's, stated that he had renewed the Babe's

business licenses on October 28, 2005, and thought he had renewed Babe's sexually-

oriented business license, as well.  Merritt testified that he went to the License and

Permit Unit on the sixth floor of the Standard Life Building, only to find no one available

to take his application.  Merritt says he inquired about the absence of anyone to help

him and was redirected, first to the fourth floor, and then to the Sign and Permit Office

on President Street.  Once there, at approximately 4:30 P.M., Merritt says the person

who ordinarily ran the office was not there.  Merritt says he explained his purpose to

Bobby Weathersby, a field officer for the Sign and Permit Office, who contacted by

telephone the person ordinarily in charge of the office to inquire about the process for

assisting Merrit with his request.  Merritt testified that after waiting several minutes,

Weathersby returned and said he could accept the application fee.   Merritt says he

tendered what he believed to be the appropriate application fee for renewal of the

Babe's privilege licenses, as well as for the renewal of the sexually-oriented business

license, and that Weathersby stamped the copy of the January 13, 2005, application,

noting "$200.00 at the top of the page and the initials "B.W."

Like Powell, Merritt also complained about what he regarded as the haphazard,

and frustrating way in which licenses for sexually-oriented business employees had

been handled by the City of Jackson.

Finally, Merritt stated that he was the manager present when City of Jackson

police officers came to Babe's on March 10, 2006, and provided the letter from

Detective Samuel Gardner stating that Babe's did not have a current sexually-oriented

business license.  Then, on March 11, 2006, Merritt said he was present when City of

Jackson police officers returned to close the business.  Merritt says he tried to obtain

the identities of all the police officers involved, but that Sgt. William Gladney would not

permit the officers to be identified;  instead, says Merritt, Sgt, Gladney arrested him

and held him in custody until 2:00 A.M. the next morning.  Merritt says he received no

notice nor an opportunity for a hearing before Babe's was closed.

### TESTIMONY OF THE WITNESSES FOR THE CITY OF JACKSON

#### A.  Field Officer Bobby Weathersby

Bobby Weathersby described his position with the City of Jackson as a field

officer and inspector with the Sign and License Division.  Weathersby wore a badge

and stated that he had been employed with the City of Jackson for 18 years, six of

those as an inspector.  Weathersby noted that while he spent most of his working

hours in the field, he occasionally administered applications for business licenses and

permits when the "office accountant" for the Sign and License Division was absent.

Weathersby recalled that on October 28, 2005, someone[16] representing Babe's

appeared in the office near closing time with a request to apply for a renewal license.

Weathersby stated that he called the regular office employee,  Yolanda Shaw, by

telephone to obtain her assistance with processing the requested license.  Weathersby

says he thought he was processing an ordinary privilege license, and understood little

about renewing licenses for sexually-oriented businesses since he was not authorized

to issue those licenses.  Weathersby says that, on Yolanda Shaw's directions, he

accepted a $200.00 fee, an amount he says he obtained from the computer, and gave

the representative a receipt.  Weathersby says Yolanda Shaw told him that she would

contact the Police Department the next day to inform them to conduct whatever

---

[16]Weathersby did not recognize Richard Merritt, now without a beard, who was seated in the courtroom.

investigations were necessary prior to issuing the sexually-oriented business license. Then, says Weathersby, almost as an afterthought, the Babe's representative requested that Weathersby stamp something on the January 13, 2005, application for a sexually-oriented business license.  Weathersby said that he did as requested to accommodate the request, stamping the application "Paid October 28, 2005" and writing the amount of $200.00 at the top of the page with his initials.

### B.  Licensing Clerk Yolanda Shaw

Yolanda Shaw, a Licensing Clerk for eight years with the City of Jackson, explained that her office normally did not take applications or renewal applications for sexually-oriented businesses, but that she would do so if she received permission or other directive from the City of Jackson Police Department.

Shaw acknowledged that she had received a telephone call at home from Bobby Weathersby on October 28, 2005, and that she directed Weathersby to accept whatever documents had been provided by the applicant and to place the money in an appropriately secure area until she returned to the office.  Shaw stated that she contacted Detective Samuel Gardner with the License and Permit Unit of the City of Jackson Police Department about one week after she returned to her office, informing him of the application submitted by Merritt on Babe's behalf.  According to Shaw, she informed Detective Gardner that she would await clearance from his department before completing the licensing process.

Shaw said she could not remember the exact date, but she acknowledged that she was directed by Detective Gardner to return the fee Merritt had paid on October 28, 2005, because proper steps for a sexually-oriented business license had not been

14

followed.  Shaw explained that the fee was removed from the secure place it had

occupied since October 28, 2005, and that it then was forwarded to the City treasury.

Shaw acknowledged that the fee was not returned to Babe's until March 13, 2006, but

she could not explain why she waited so late to do so.

Shaw further explained that her office was ordinarily responsible for taking

applications for business privilege licenses, and that no inspections were required for

the renewal of privilege licenses.  Shaw also testified that her office was the issuing

authority for sexually-oriented business licenses once the required inspections were

conducted and the police department gave clearance for the license to be issued.

Finally, Shaw testified that she had received a copy of Detective Gardner's

letter to Babe's dated March 10, 2006, and understood that Babe's would be closed for

failing to obtain a license in the proper manner.

### C.  Detective Samuel Gardner

Detective Samuel Gardner stated that he had been a Detective with the

Jackson Police Department for five years when he first was assigned to the License

and Permit Inspection Division on October 13, 2005.  He says he has made an effort

to familiarize himself with the Ordinance provisions applicable to his position and with

the license status of the sexually-oriented businesses in Jackson, Mississippi.

Gardner testified that an application for a  sexually-oriented business license

was six pages long and that a renewal application was the same length.  Gardner did

not dispute that Babe's had applied for a renewal license on January 13, 2005, and

that the application had been denominated a "temporary license" by Emma Wiggins,

even though the City of Jackson had no authority to issue temporary licenses.

Detective Gardner said he knew about Richard Merritt's attempt to apply for a sexually-oriented business license on October 28, 2005, and that he had been informed of this by Yolanda Shaw.  According to Detective Gardner, it was he who directed the $200.00 fee paid by Merritt on Babe's behalf to be refunded.  Detective Gardner testified that he had concluded from his review of his file on Babe's Show Club, that the business had not been licensed properly since March of 2004, that different signatures appeared on different applications, and that James B. Altman, the purported owner, had never appeared to renew the license.  Gardner stated that he was concerned about who now owned Babe's and precisely who was requesting a license.  Detective Gardner stated further that the January 13, 2005, application being relied upon by Babe's, while denominated a "temporary license" by Emma Wiggins, was never approved and could not serve as a valid license.

Gardner could not explain what constituted the ordinary process to be followed when applying for the issuance of a renewal license for a sexually-oriented business. He pointed to his recent appointment to the job, and offered that, in spite of his inexperience, he was trying to do things "by the book" in accordance with what he believed the job required.

Gardner acknowledged that it was he who had contacted a building inspector in December of 2005, to inspect the Babe's premises.  In explanation, he stated that since the renewal process was so stale, he determined to engage in activity which would bring Babe's into compliance with the Ordinance.  Thereafter, Gardner says, the building inspector found a defective urinal (subsequently corrected), that Babe's was notified of this finding, and that he also informed Babe's by a December, 2005, letter

16

that it had no valid operating license.  As earlier mentioned, Bo Powell contends that he never received this letter.  Gardner, himself, has no copy of this letter.

Significantly, Detective Gardner admitted that upon assuming his present position, and upon reviewing the records pertaining to sexually-oriented businesses in order to ascertain their respective license statuses, he had discovered several inconsistent procedures followed by the City of Jackson in its licensing process. Gardner admitted that he did not conduct any specific investigation regarding Babe's January 13, 2005, application to ascertain why it had not been approved.  Gardner further acknowledged that it was he who concluded that the January 13, 2005, application/ "temporary license" was not valid, and that this caused him to issue the March 10, 2006, letter.   Gardner also acknowledged that no notice had been issued to Babe's informing the business that its application of January 13, 2005, had been approved or denied.

## DUE PROCESS JURISPRUDENCE

The Fourteenth Amendment protects individuals from being deprived of their property without due process of law by guaranteeing substantive due process and procedural due process.  *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).  By barring certain government actions regardless of the fairness of the procedures used to implement them, substantive due process serves to prevent governmental power from being used for purposes of oppression. *Id*. Substantive due process may require the court to void certain types of government action that infringe on individual rights and individual freedom of action.  *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir. 1993).

17

Substantive Due Process claims are guided by the deferential "rational basis" test.  *Simi Investment Company, Inc. v. Harris County, Texas*, 236 F.3d 240, 249-50 (5th Cir. 2000), *cert. denied*, 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) (a substantive due process violation in the context of property rights will exist only if the denial of the right is not rationally related to a legitimate governmental interest).  "The question is whether a rational relationship exists between the [policy] and a conceivable legitimate objective.  If the question is at least debatable, there is no substantive due process violation."  *Id.* at 251, quoting *FM Property Operating Company v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).   So, a violation of substantive due process occurs only when the government deprives someone of liberty or property or, only when the government works a deprivation of a constitutionally protected interest."  *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)*;  Simi Investment Co.,* at 249.  Plaintiffs first must establish that they held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies.  *Simi Investment Co.*, at 249-50.

In contrast to substantive due process, procedural due process requires the government to follow appropriate procedures when its agents decide to "deprive any person of life, liberty, or property."  *Daniels*, 474 U.S. at 327.   "No state may deprive any person of property without due process of law."  U.S. Constitution Amendment XIV § 1.  The Due Process Clause encompasses the protection of a guarantee of fair procedure.  The United States Supreme Court consistently has held that "some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976);  *United*

18

*States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S.Ct. 492, 126

L.Ed.2d 490 (1993) ("Our precedents establish the general rule that individuals must

receive notice and an opportunity to be heard before the Government deprives them of

property.").

Plaintiff in the instant case contends that City of Jackson denied it

constitutionally adequate notice, hearing and appeal opportunities, as well as a valid

license to operate its business.  Plaintiff argues that procedural due process concerns

are triggered when an ordinance is not implemented in a fair manner, or its provisions

are deviated from in an arbitrary manner, and can arise from administrative actions

relating to the City of Jackson's licensing procedure relating to sexually oriented

businesses.  *Jackson Court Condominiums v. New Orleans*, 874 F.2d 1070, 1074 (5th

Cir. 2002).[17]  Deviation from the established procedure implicates procedural due

process, says plaintiff.  *Woodard v. Los Fresnos Independent School District*, 732 F.2d

1243, 1245-46 (5th Cir. 1984) (school official's deviation from school regulations did

not deprive student of substantive due process).

<u>THE CITY OF JACKSON'S ORDINANCE AND
PROCEDURAL DUE PROCESS</u>

A city ordinance which represents an exercise of the municipality's police

powers is presumed to be constitutionally valid, with the burden of showing

---

[17]Once an action is characterized as legislative, procedural due process requirements do not apply." *Jackson Court*, at 1074.  For instance, when a legislature passes a law which affects a general class of persons, those persons have received procedural due process, the legislative process.  So, any challenges to such laws must be based on their substantive compatibility with constitutional guarantees. *County Line Joint Venture v. City of Grand Prairie, Texas*, 839 F.2d 1142, 1144 (5th Cir. 1988).

unreasonableness being cast upon those who challenge the ordinance. *Goldblatt v. Hempstead*, 369 U.S. 590, 595-96, 82 S.Ct. 987, 990-91, 8 L.Ed.2d 130 (1962). The failure of an agency to follow its own regulations is not *per se* a denial of procedural due process. *Smith v. City of Picayune*, 795 F.2d 482, 488 (5th Cir. 1986). Procedural due process requires governmental assurance that individuals are given certain procedural safeguards before being deprived of life, liberty or property. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir. 1993).

A procedural due process right is implicated when a person possesses a constitutionally recognized interest in life, liberty, or property. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The United States Supreme Court has held that the barroom type of exotic dancing presented at Babe's lies on the outer perimeters of the First Amendment's protection. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66, 111 S. Ct. 2456, 115 L. Ed. 2d 504 (1991) (plurality opinion) (citing *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975));  *see also Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981);  *J&B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 369 (5th Cir. 1998).  Explaining, the United States Supreme Court has added that even "[s]exual expression that is indecent but not obscene is protected by the First Amendment." *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S. Ct. 2829, 106 L. Ed. 2d 93 (1989); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 1391, 146 L.Ed.2d 265 (2000).

The plaintiff's procedural due process claim in the instant case is based on this First Amendment protection.  A scheme establishing a prior restraint, such as a licensing requirement, on protected speech which places unbridled discretion in the decision maker by failing to impose either objective standards for a decision or adequate procedural safeguards creates an impermissible risk of suppression of that protected right with every application.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. at 226.

The plaintiff in the instant case charges that the City of Jackson has failed to satisfy procedural safeguards due to the manner in which it has administered the licensing provisions of its Ordinance.  *See  Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (a prior restraint must satisfy both substantive and procedural safeguards).  Plaintiff accuses the defendants of having perpetrated "two evils" not to be tolerated in a licensing requirement, namely 1) unbridled discretion in the hands of a government official or agency;  and 2) failure to place limits on the time in which decisionmaker must act to issue the license.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. at 225-26.

The plaintiff complains that the City of Jackson deprived it of its procedural due process rights under the United States Constitution because the City (1), has failed to act on the plaintiff's application for a sexually oriented business license; (2), has issued instead a "temporary license" in violation of its own Ordinance;  and (3), has not followed the provisions of its own Ordinance regarding the issuance of the sexually-oriented business license, to include conducting inspections and acting within the time frames set forth in the Ordinance.  This court finds that these complaints are valid, substantiated and impactful.

21

The plaintiff points to the City's bureaucratic delay which, whether in bad faith or simple negligence, caused the City to refrain from acting on the plaintiff's application for a sexually-oriented business license pursuant to a method which the City assured the plaintiff was proper, at least for the time being, or until further notice.  For instance, Sec. 30-279(e) of the City of Jackson Ordinance provides that, "[w]ithin 30 days after receipt of a properly completed sexually-oriented business license application, the Jackson Police Department Chief shall approve or deny the issuance of a license."  If the City of Jackson fails to act at all, the only provision covering this eventuality is Sec. 30-279(g) which states that approval for a sexually-oriented business license will not be delayed past the 30-day period if the fire and building inspections, and the background checks, are not complete.  Sec. 30-279(g) goes on to state that, "[i]f, after approving the issuance of a license, the Police Chief receives information from his investigation which he determines constitutes grounds for denial of a license under subparagraph (b) of this section, then the sexually-oriented business license issued pursuant to this subparagraph (g) shall be immediately revoked."

The City of Jackson admits that it did not act on the plaintiff's application for a sexually-oriented business license within the thirty as days provided by its Ordinance, but it contends that its issuance of a "temporary license" permitted Babe's to continue operation, believing that this policy ameliorates the constitutional concern.

This admission by the City of Jackson that it failed to act within the time frames of the Ordinance is troublesome.  Where a city fails to comply with the provisions of its own Ordinance and the objective terms set out therein, then, by failing to follow its own established procedure the city denies the plaintiff its procedural due process rights.

22

*Browning-Ferris Industries v. City of Maryland Heights*, 747 F.Supp. 1340 (E.D. Mo. 1990);  *ATM Express, Inc. V. City of Montgomery, Alabama*, 376 F.Supp. 2d 1310, 1333 (M.D. Ala. 2005) (a city can only process permit applications based upon objective criteria set forth in the ordinance).

Additionally troublesome is the City's issuance of a "temporary license."  The City has acknowledged that nothing in the Ordinance permits a "temporary license;" yet, the City has further acknowledged that on several occasions it has issued such. Permitting establishments such as Babe's to open, conditioned upon some later licensing decision by a city official or administrator, has been found to be an impermissible prior restraint on expression.  *See Fly Fish v. City of Cocoa Beach*, 337 F.3d 1301, 1313-14 (11th Cir. 2003), citing *Lady J. Lingerie v. City of Jacksonville*, 176 F.3d 1358, 1363 (11th Cir. 1999).

The City of Jackson further has admitted that it did not follow Sec. 30-279(a)[18] of its Ordinance when Bo Powell submitted the January 13, 2005, application to Emma Wiggins, the clerk in charge of the License and Permits Division on that day.  No prompt investigation was conducted and, instead, Emma Wiggins simply wrote the words "temporary license" at the top of the application.  Wiggins then told Powell that this would serve as his authorization to do business until a permanent license was issued.

---

[18]Sec. 30-279(a) provides that, "[u]pon receipt of an application for a sexually oriented business license, the Jackson Police Department shall promptly investigate the information provided in the application concerning the criminal background of the applicant(s) and shall record the results of this investigation in writing within five days of the completion of this investigation."

The City of Jackson also admits that the notices required by Sec. 30-279(b)[19] were not issued when Powell submitted his January 13, 2005 application.  The City of Jackson admits that no inspections were conducted by the fire department or the building inspector as required by Sec. 30-279(c)[20] and (d),[21] and that no writing informed the plaintiff that its license application had been denied as required under Sec. 30-279(I).

The testimony from the witnesses highlight other procedural concerns:  this court was provided no explanation why Signs and Licenses charged Babe's $200.00 when the renewal fee for a sexually-oriented business should have been $100.00 and where the City contends that Babe's had a valid "temporary license" for 2005.  Further, the City has failed to explain why it took so long to return this $200.00 after supposedly determining immediately after its payment that the City was taking the position that Babe's had not submitted a valid application.  Further, with regard to the application itself, the City admits that it never required the six-page application demanded by the Ordinance.  Then, there is the conflicting advice provided by City personnel.  Ms.

---

[19]Sec. 30-279(b) provides that, "(b) [w]ithin five days of receipt of an application for a sexually oriented business license, the police chief shall notify the fire chief and the building inspector of such application. In making such notification, the police chief shall request that the fire chief and building inspector promptly inspect the premises for which the sexually oriented business license is sought to assess compliance with the regulations under their respective jurisdictions."

[20]Sec. 30-279(c) provides that, "[t]he fire chief shall provide to the police chief a written certification of whether the premises are in compliance with the Fire Code within ten days of receipt of notice of the application."

[21]Sec. 30-279(d) states that, "[t]he building inspector shall commence the inspection of the premises for which a sexually oriented business license is sought promptly upon receipt of notice of the application, and shall complete a written certification of whether the premises are in compliance with the Building Code, and the provisions of this article related to physical characteristics of the premises within 15 days after receipt of the application."

Wiggins supposedly told Babe's manager that the owner need not appear after the initial application process.  Now, Detective Gardner says otherwise.  Detective Gardner says he sent a December, 2005, letter to Babe's on various matters, but has no copy of such letter, while Babe's denies ever having received it.

Notwithstanding all these admitted lapses on the part of the City of Jackson regarding the application of Babe's for a sexually-oriented business license, the City of Jackson now asks this court simply to disregard them and to consider only whether an application for a license on behalf of Babe's was applied for in March of 2006.  Moreover, says the City, the plaintiff could have avoided being closed down simply by following the appeal procedures[22] under the Ordinance instead of filing the instant lawsuit.

This court is not persuaded by this argument.  Babe's has been denied the right to operate after being told that it could rely on the January 13, 2005, application marked as a "temporary license" and after being told on October 28, 2005, that it could renew its license with the Signs and Permits Department, a directive that was wholly

---

[22]Sec. 30-328 of the City of Jackson Ordinance provides in part that, "(a) [a]ny denial, suspension, or revocation of a new or renewal license under this article may be appealed to the city council by written notice within ten days of such denial, suspension, or revocation. Unless the applicant requests a longer period, the city council must hold a hearing on the appeal within 14 days and must issue a decision affirming or reversing the denial, suspension, or revocation within five days after the hearing.  (b)   Any decision by the city council shall be a final appealable order, and the applicant or licensee may seek prompt judicial review of such administrative action in any court of competent jurisdiction.  (c)   Subject to the provisions of subsection (e) of this section, any licensee lawfully operating a sexually oriented business prior to the denial of a license renewal application, or the suspension or revocation of a license, may continue to operate said business during the pendency of an appeal of a decision rendered under this section to the city council or to a court of competent jurisdiction.  (d)   Subject to the provisions of subsection (e) of this section, any licensee lawfully acting as an employee in a sexually oriented business prior to the denial of a license renewal application, or the suspension or revocation of a license, may continue to serve in such capacity during the pendency of an appeal of a decision rendered under this section to the city council or to a court of competent jurisdiction.

25

incorrect.  Equitably, this court cannot accept a contention that the plaintiff failed to follow the Ordinance when the City of Jackson has failed to do so.

Now, Babe's has been closed for several days.  In *Elrod v. Burns*, 427 U.S. 347, 353, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the United States Supreme Court held that, "[t]he loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury," citing *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

## PRELIMINARY INJUNCTION STANDARD

Rule 65 of the Federal Rules of Civil Procedure authorizes federal injunctions, and the requirements that must be satisfied to obtain a preliminary injunction are set out in the case law:  "To obtain a preliminary injunction, a party must show (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted;  (3) that the threatened injury to the plaintiff outweighs the injury to the defendant;  and (4) granting the injunction would not disserve the public interest." *Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994);  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974) ( en banc ).  "A preliminary injunction is an 'extraordinary remedy' that should not be granted unless a party demonstrates the above four factors by a 'clear showing." *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1051 (5th Cir. 1997).  "Strict proof of each element is required before a court may issue a preliminary injunction." *Plains Cotton Cooperative Association of Lubbock, Texas v. Goodpasture Computer Services, Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987).  "Because preliminary injunctive

26

relief should be granted only if the movant has clearly carried the burden of persuasion on all four factors, it is unnecessary for the court to consider the remaining factors when the movant fails to carry its burden on any one of the factors."  *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir. 1989) ("The failure of a movant to establish one of the above four elements will result in the denial of a motion for a temporary injunction.").

The "[t]hreat of irreparable injury is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Charles Alan Wright & Arthur B. Miller, *Federal Practice and Procedure* § 2948.1.  The United States Supreme Court "has stated that '[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies ... ."  *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). As noted above, the loss of First Amendment rights for even minimal periods of time constitutes irreparable injury.

This court finds that the plaintiff successfully has shown that it has suffered irreparable harm, and is likely to continue to do so under the present circumstances. *Elrod v. Burns*, 427 U.S. at  373.  This court also finds that  a substantial likelihood of success on the merits exists, though this court expresses no opinion on the ultimate merits of this case at this time.  Finally, this court finds that an injunction would not substantially injure the City of Jackson, particularly when the issuance of injunctive relief would offer the City the opportunity to implement measures which would lead to the proper administration of its Ordinance, and that the public interest would be furthered by the granting of injunctive relief in this case.

27

Therefore, this court shall grant the plaintiff's request for injunctive relief and permit Babe's immediately to reopen for business and by April 14, 2006, to submit a proper six-page application for a sexually-oriented business license for 2006, while the City of Jackson processes this application in accordance with the time-lines and objective criteria of its Ordinance.

Once again, this court recognizes that this ruling on the request of the plaintiff for injunctive relief is not to be construed as a determination on the merits of this case. In a preliminary injunction context, the movant need not prove the case, but must establish each of the aforesaid four elements necessary to obtain the relief sought. *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n. 11 (5th Cir. 1991).   This court concludes that the plaintiff has done so.

## CONCLUSION

_____Therefore, in accordance with the above, plaintiff's motion for a temporary restraining order and/or emergency injunctive relief **[docket # 2]** submitted pursuant to Rule 65 of the Federal Rules of Civil Procedure is hereby granted.


_____**SO ORDERED** this the 7th day of April, 2006.

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**


Civil Action No. 3:06-cv-144WS
Order Granting Preliminary Injunction

28